1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   KENNETH CALIHAN,                         No.  2:12-cv-2937-MCE-EFB P

11                  Plaintiff,

12          v.                                 ORDER AND FINDINGS AND
                                               RECOMMENDATIONS
13   MATTHEW CATE, et al.,

14                  Defendants.

15

16          Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  Defendant Knipp moves to dismiss and to declare plaintiff a vexatious litigant.[1]

18   ECF No. 30.  For the reasons that follow, it is recommended that the motion to dismiss be granted

19   and the motion to declare plaintiff vexatious be denied.

20       **I.   Background**

21          Plaintiff's second amended complaint alleges the following facts:  On December 9, 2011,

22   plaintiff (an inmate at Mule Creek State Prison, hereinafter "MCSP") was attacked by fellow

23   inmate Tab Bennett and suffered "major injuries."[2]  ECF No. 17 at 2.  Bennett was a "level four"

24   inmate, while plaintiff was "level two."  *Id.*  According to prison policies, inmates with such

25   disparate classification numbers must not be placed on the same yard.  *Id.*  In addition, defendant

26   ──────────────────────
        [1] Knipp is the sole remaining defendant in this action.  ECF Nos. 18, 23.

27
        [2] As of May 2013, Bennett was being prosecuted in Amador County for the attack against
28   plaintiff.  *Id.* at 6.

1

1   Knipp, the warden at MCSP, knew that plaintiff had good reason to fear for his safety, having

2   testified against Mexican Mafia members in another trial. *Id.* at 1, 3. According to the complaint,

3   another witness in the same trial was killed for having testified. *Id.* at 3. Nevertheless, Knipp

4   allegedly did not tell his staff about plaintiff's safety concerns. *Id.* at 1.

5   **II. Defendant's Motion to Dismiss**

6   **A. <u>Failure to State a Claim</u>**

7   Defendant argues that plaintiff has failed to state a claim upon which relief may be

8   granted and thus dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6). In order

9   to survive a motion to dismiss under that rule, a complaint must contain "enough facts to state a

10   claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-

11   55, 562-63, 570 (2007) (stating that the 12(b)(6) standard that dismissal is warranted if plaintiff

12   can prove no set of facts in support of his claims that would entitle him to relief "has been

13   questioned, criticized, and explained away long enough," and that having "earned its retirement,"

14   it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). Thus,

15   the grounds must amount to "more than labels and conclusions" or a "formulaic recitation of the

16   elements of a cause of action. *Id.* at 1965. Instead, the "[f]actual allegations must be enough to

17   raise a right to relief above the speculative level on the assumption that all the allegations in the

18   complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted). Dismissal may be

19   based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to

20   support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

21   1990).

22   The complaint's factual allegations are accepted as true. *Church of Scientology of Cal. v.*

23   *Flynn*, 744 F.2d 694, 696 (9th Cir. 1984). The court construes the pleading in the light most

24   favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks Sch. of Bus., Inc. v.*

25   *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). General allegations are presumed to include

26   specific facts necessary to support the claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

27   (1992).

28   /////

2

The court may disregard allegations contradicted by the complaint's attached exhibits. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.1998).  Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987)).  The court may consider matters of public record, including pleadings, orders, and other papers filed with the court.  *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).  "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept unreasonable inferences, or unwarranted deductions of fact.  *Sprewell*, 266 F.3d at 988.

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal.  *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

Plaintiff's claim against defendant arises under the Eighth Amendment to the U.S. Constitution.  "'Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'"  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)).  The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is "objectively, sufficiently serious" and (2) the prison officials had a "sufficiently culpable state of mind," acting with deliberate indifference.  *Farmer*, 511 U.S. at 834 (internal quotations omitted).  "Deliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835.  To show deliberate indifference, "an inmate must prove that the official was both aware of facts from which the

1    inference could be drawn that a substantial risk of serious harm existed, and he must also have

2    drawn the inference." *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995) (internal quotation

3    marks omitted).

4           Defendant argues that plaintiff's claim should be dismissed because plaintiff has not

5    alleged that defendant knew that Bennett, in particular, posed a risk of harm to plaintiff.

6    Defendant argues that, because there is nothing in the complaint suggesting that Bennett attacked

7    plaintiff because of his testimony, or that would have indicated to defendant that Bennett posed a

8    risk specifically to plaintiff, plaintiff's claim fails.

9           No case authority is cited holding that the defendant must be aware that another inmate

10   poses a risk of harm specific to the plaintiff to state a claim for deliberate indifference.  The

11   absence of such authority is not surprising – such a rule would permit prison officials to

12   deliberately place inmates they know to be uncontrollably violent in the general prison

13   population, so long as the violent inmate did not have a specific target in mind.  Here, plaintiff

14   has alleged that it was indifferent of defendant to place Bennett and himself in the same yard due

15   to their disparate custody levels, which in turn are based at least in part on an assessed risk of the

16   inmate's propensity for violence.  These general allegations are sufficient for the parties and the

17   court to infer that defendant knew it would be risky to place Bennett on the lower-custody yard,

18   but did so anyway.  *See also* Cal. Code Regs. tit. 15, § 3375 (providing the classification process,

19   and noting, "A lower placement score indicates lesser security control needs and a higher

20   placement score indicates greater security control needs.").[3]  Plaintiff alleges that defendant was

21   aware of Bennett's higher custody level, as well as plaintiff's specific fears of retribution, but

22   nevertheless placed Bennett on the yard with plaintiff.  These allegations sufficiently claim that

23   defendant was aware of facts from which a substantial risk of serious harm could be inferred.

24   /////

25   
26          [3] Defendant argues that plaintiff may not base his claim on a violation of state prison
     regulations.  While this is true enough (*James v. Sweeny*, No. 1:12-cv-01704-LJO-MJS (PC),
27   2012 U.S. Dist. LEXIS 182344. at *12 (E.D. Cal. Dec. 27, 2012)), a prison policy may be
     relevant to the question of whether the defendant knowingly disregarded a risk of harm; for
28   example, where a defendant flagrantly violates a policy specifically designed to maintain safety.

1    Defendant also argues that the complaint lacks any allegation that defendant actually drew

2    the inference of risk.  Plaintiff does allege, however, that "defendant[] clearly knew of the

3    substantial risk of serious harm and disregarded that risk[.]"  ECF No. 17 at 3.  Combined with

4    plaintiff's allegations that defendant knew of facts showing that Bennett posed a risk of harm to

5    inmates on plaintiff's yard, this allegations suffices to plead that defendant actually inferred from

6    those facts such risk of harm.

7    Defendant next argues that the complaint must be dismissed because plaintiff's allegations

8    regarding his injuries are insufficient to show more than de minimis physical injury as required by

9    42 U.S.C. § 1997e(e).  That statute provides: "No Federal civil action may be brought by a

10   prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of

11   physical injury . . . ."  Defendant relies on *Oliver v. Keller*, 289 F.3d 623, 629 (9th Cir. 2002) to

12   argue that plaintiff's allegation that he suffered "major injuries" as the result of Bennett's attack is

13   insufficient under § 1997e(e).  Defendant argues that, pursuant to that statute, plaintiff's

14   complaint "alleges no entitlement to damages."  ECF No. 30-1 at 13.

15   In *Oliver*, the U.S. Court of Appeals for the Ninth Circuit determined that the plaintiff had

16   alleged only de minimis physical injury and thus could not proceed on a claim for emotional

17   injury.  289 F.3d at 629.  The plaintiff had testified at deposition that his alleged pain was

18   "nothing too serious" and did not require medical treatment.  *Id.*  He further failed to describe the

19   nature, if any, of the physical injuries he sustained in a fight.  *Id.*  The court was careful to state,

20   however, that the failure to meet the physical injury requirement defeated only the plaintiff's

21   claims for mental and emotional injury and that any other claim for compensatory, nominal, or

22   punitive damages remained.  *Id.* at 629-30.

23   Here, while plaintiff's amended complaint does not go into detail about the precise nature

24   of the injuries he suffered, it does allege that plaintiff was physically attacked by another inmate

25   and consequently suffered "serious" injury to the extent that he was "almost murdered."  ECF No.

26   17 at 3.  Elsewhere in the complaint plaintiff states that "[d]ue to the major – injuries that plaintiff

27   suffered on the date of 12-09-2011, plaintiff can bring a civil rights case . . . ."  *Id.* at 2.  While the

28   "almost murdered" characterization is not described in terms of what bodily injury occurred, the

1    allegation of having sustained "serious" and "major" injuries suffices at this stage of the

2    proceedings to allege more than de minimis physical injury.  Accordingly, defendant's request to

3    dismiss the complaint for failure to allege more than de minimis physical injury must be rejected.

4          **B.  Res Judicata and the "Two Dismissal Rule"**

5          Defendant next argues that the complaint must be dismissed as barred by res judicata

6    because plaintiff has already dismissed two prior cases involving the attack by Bennett, and the

7    second dismissal was "on the merits" pursuant to Federal Rule of Civil Procedure 41(a)(1)(B).[4]

8    That rule provides that a voluntary dismissal is ordinarily without prejudice.  "But if the plaintiff

9    previously dismissed any federal- or state-court action based on or including the same claim, a

10   notice of dismissal operates as an adjudication on the merits."  Fed. R. Civ. P. 41(a)(1)(B).

11         Defendant presents these two prior cases voluntarily dismissed as ground for application

12   of the two dismissal rule here:

13         1.  *Kenny Calihan v. M. Kaplan, et al.*, Amador County Superior Court, Case No. 12-

14              CVC-07748 (hereinafter *Kaplan*).  Plaintiff filed this action in 2012, alleging

15              negligence against correctional supervisor Kaplan (also named a defendant in this

16              action prior to screening).  ECF No. 30-5.  Plaintiff alleged that Kaplan failed to

17              supervise his staff at the time Bennett attacked plaintiff.  *Id*.  Plaintiff also alleged that

18              Kaplan wrongfully allowed Bennett to access the exercise yard at the same time as

19   _____

20         [4] Defendant presents this argument as two separate arguments: (1) that the complaint
     should be dismissed pursuant to the "two dismissal" rule and (2) that the complaint should be
21   dismissed under the doctrine of res judicata.  Defendant states that, under the "two dismissal"
     rule, "the second voluntary dismissal bars a subsequent third action, when it is filed," citing
22   *Commercial Space Management Co. v. Boeing Co.*, 193 F.3d 1074, 1076 (9th Cir. 1999).  Neither
     that case nor Rule 41(a) itself contains any such language.  The rule simply states that the second
23   voluntary dismissal of an action "based on or including the same claim . . . operates as
     adjudication on the merits."  Fed. R. Civ. P. 41(a)(1)(B).  Thus, defendant's two arguments are
24   part of a single analysis: whether plaintiff's current case is barred by principles of claim
     preclusion due to the effect of second dismissal of prior action being an adjudication on the
25   merits.  *See, generally, Lake at Las Vegas Investors Group v. Pacific Malibu Dev. Corp.*, 933
     F.2d 724 (9th Cir. 1991) (referring to the analysis as "Rule 41(a)(1) res judicata"); *Melamed v.*
26   *Blue Cross of Cal.*, 557 F. App'x. 659, 661-62 (9th Cir. 2014) (affirming district court's dismissal
     of third action pursuant to Rule 41's "two dismissal rule," applying res judicata principles to
27   determine that the adjudication of the second action on the merits under Rule 41 barred a third
     action based on the same nucleus of operative facts).

28

6

plaintiff, knowing of their disparate custody classifications and plaintiff's safety concerns. *Id.* Plaintiff voluntarily dismissed *Kaplan* in September 2012. ECF Nos. 30-6, 30-7.

2. *Calihan v. Knipp*, Eastern District of California Case No. 2:12-cv-2356 (hereinafter *Knipp*). Plaintiff filed this action one month prior to dismissing *Kaplan* in the state court, alleging that defendant Knipp, along with Kaplan and two other correctional staff members (Barroga, who was screened from this action, and Ybarra) failed to supervise their inferior correctional officers during the time Bennett attacked plaintiff. ECF No. 30-8. Plaintiff claimed that defendants failed to use medical detectors to check for weapons on entering the exercise yard. *Id.* Plaintiff alleged that defendant Knipp was not present, in violation of state regulations. *Id.* Plaintiff voluntarily dismissed *Knipp* in February 2014. ECF No. 30-9.

Defendant argues that the voluntary dismissal of the second of these cases resulted in an adjudication on the merits by operation of Rule 41(a)(1)(B) and that is therefore res judicata as to the instant case.

Res judicata will bar a later suit when an earlier suit "'(1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies.'" *Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985, 987 (9th Cir. 2005) (quoting *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002)). Thus, to determine whether the instant case is barred by the combined effect of Rule 41(a)(1)(B) and res judicata, the court must undertake the following step-wise analysis: First, the court must determine whether *Kaplan* and *Knipp* were "based on or include[ed] the same claim" as that phrase is used in Rule 41(a)(1)(B). This analysis is identical to determining whether *Kaplan* and *Knipp* would be considered to involve the same "claim or cause of action" under familiar res judicata law. *Lee v. Thornburg Mortg. Home Loans Inc.*, No. 14-cv-00602 NC, 2014 U.S. Dist. LEXIS 137758, at *13-14 (N.D. Cal. Sept. 29, 2014); *Thomas v. Wells Fargo Bank, N.A.*, No. 13-02065 JSW, 2013 U.S. Dist. LEXIS 135954, at *6-7 (N.D. Cal. Sept. 23, 2013). If not, there has been no prior adjudication on the merits, and res judicata is inapplicable. If so, then *Knipp* must be considered

1    to have been adjudicated on the merits under the two dismissal rule, and the court must proceed to

2    a second step.  At the second step, the court must determine whether the instant case and *Knipp*

3    involve the same claim or cause of action and involve identical parties or privies.  If not, res

4    judicata does not apply.  If so, the instant case is barred by res judicata.

5           Turning to the first step, *Kaplan* and *Knipp* will be considered "based on or including the

6    same claim" if: (1) the two suits arise out of the same transactional nucleus of facts; (2) rights or

7    interest established by the prior judgment would be destroyed or impaired by prosecution of the

8    second action; (3) the two suits involve infringement of the same right; and (4) substantially the

9    same evidence would be presented in both actions.  *Mpoyo*, 430 F.3d at 987.

10          The court must use a "transaction test" to determine whether *Kaplan* and *Knipp* arise from

11   the same transactional nucleus of fact; i.e., they do if "they are related to the same set of facts and

12   . . . could be conveniently tried together."  *Id.* (quoting *Western Sys., Inc. v. Ulloa*, 958 F.2d 864,

13   871 (9th Cir. 1992)).  The Ninth Circuit has indicated that this element – sharing the same nucleus

14   of facts – is often outcome-determinative.  *Id.* at 988.  Here, it is clear that *Kaplan* and *Knipp* pass

15   the transaction test – both cases relate to Bennett's attack on plaintiff and, because both cases

16   revolve around plaintiff's claims that the attack resulted from poor job performance by prison

17   officials (and include identical allegations against Kaplan), they could conveniently be tried

18   together.

19          As there was no judgment in *Kaplan*, the court cannot assess whether rights established by

20   a judgment in that case would have been impaired by the prosecution of *Knipp*.  Nevertheless,

21   because Kaplan was a defendant in both actions, if *Kaplan* had reached a final determination on

22   the merits, proceeding against him in *Knipp* based on the same incident could certainly have

23   destroyed or impaired the resolution reached in *Kaplan*.  Additionally, both suits involve the

24   infringement of the same right – plaintiff's right to adequate protection from attack while under

25   the care of state prison authorities.  Lastly, because plaintiff sued Kaplan in both cases on

26   substantially the same claims and alleged many of the same facts, some evidence would have

27   been duplicated had both cases proceeded.

28   /////

In sum, these four factors all weigh in favor of a finding that *Kaplan* and *Knipp* were based on the same claim. Accordingly, plaintiff's voluntary dismissal of *Knipp* must be viewed as a disposition on the merits, and the court must proceed to the second step of the analysis: whether the instant case and *Knipp* involve the same claim or cause of action and involve identical parties or privies.

The court again employs the transaction test to determine whether this case and *Knipp* involve the same claim and concludes that the two cases share the same core facts. Again, both cases arise out of the attack by Bennett on plaintiff. Both cases allege that the attack was caused or allowed by prison official malfeasance and include mostly the same defendants (*Knipp* also raised claims against a correctional officer named Ybarra). Both cases include many of the same factual allegations. It is again easy to conclude that the cases share the same core facts and could conveniently be tried together and thus that they arise from the same transactional nucleus of fact.

In addition, because *Knipp* must be considered to have been dismissed on the merits under Rule 41(a)(1)(B) and included the same claims against all defendants named in this action, including the only remaining defendant (Knipp), allowing this case to go forward would destroy the expectation of those defendants that plaintiff's claims against them for whatever role they had in the incident with Bennett were extinguished. Both this case and *Knipp* rested on plaintiff's claim that his constitutional rights were violated by these officers' acts or failures to act during and before that incident. Both cases would involve the same evidence. Accordingly, under the transaction test, this case and *Knipp* are based on the same claim.

By operation of Rule 41(a)(1)(B) as discussed above, *Knipp* resulted in a final determination on the merits. As both cases involved the same parties, all elements of claim preclusion have been met here (that is, the cases involve the same claim, the earlier case concluded on the merits, and the cases involve the same parties). For that reason, plaintiff's complaint must be dismissed without leave to amend.

**III. Defendant's Motion to Declare Plaintiff Vexatious**

Defendant asks the court to declare plaintiff a vexatious litigant, require him to post a security before proceeding further in this action, and issue a pre-filing order prohibiting him from

1  filing any future cases against defendant relating to the attack by Bennett without first obtaining

2  the court's permission.

3  Under Eastern District of California Local Rule 151(b),

4  [T]he Court may at any time order a party to give a security, bond, or undertaking
   in such amount as the Court may determine to be appropriate.  The provisions of

5  Title 3A, part 2, of the California Code of Civil Procedure, relating to vexatious
   litigants, are hereby adopted as a procedural Rule of this Court on the basis of

6  which the Court may order the giving of a security, bond, or undertaking,
   although the power of the Court shall not be limited thereby.

7

8  California Code of Civil Procedure, part 2, Title 3A is entitled "Vexatious Litigants" and includes

9  the following provision:

10  In any litigation pending . . ., at any time until final judgment is entered, a
    defendant may move the court, upon notice and hearing, for an order requiring the

11  plaintiff to furnish security . . ..  The motion for an order requiring the plaintiff to
    furnish security shall be based upon the ground, and supported by a showing, that

12  the plaintiff is a vexatious litigant and that there is not a reasonable probability
    that he or she will prevail in the litigation against the moving defendant.

13

14  Cal. Civ. Proc. Code § 391.1.  As is relevant to this motion, California law defines a vexatious

15  litigant as a person who, in the seven years immediately preceding the motion, has commenced,

16  prosecuted, or maintained *in propria persona* at least five litigations other than in a small claims

17  court that have been finally determined adversely to the person.  *Id.* § 391(b)(1).  To order the

18  posting of a security under § 391.1, the court must additionally conclude, after hearing evidence,

19  "that there is no reasonable probability that the plaintiff will prevail in the litigation against the

20  moving defendant."  *Id.* § 391.3(a).  Thus, to issue the order requested by defendant, this court

21  must find that: (1) plaintiff has filed five litigations in the past seven years that have been finally

22  determined adversely to plaintiff and (2) there is no reasonable probability that plaintiff will

23  succeed on his claims against defendant.  "One purpose of authorizing security for costs is to

24  allow the court to have some control over the administration of a lawsuit."  *Sherman v. City of*

25  *Davis*, No. S-11-0820 JAM GGH PS, 2012 U.S. Dist. LEXIS 29787, at *31 (E.D. Cal. Mar. 6,

26  2012); *Ilro Productions, Ltd. v. Music Fair Enterprises*, 94 F.R.D. 76, 78 (S.D.N.Y. 1982) (citing

27  *Leighton v. Paramount Pictures Corp.*, 340 F.2d 859, 861 (2d Cir. 1965).  "In determining

28  whether to impose a bond, the court may 'take all the pertinent circumstances into account

10

1   including the conduct of the litigants and the background and purpose of the litigation.'" *Id.*

2   (quoting *Leighton*, 340 F. 2d at 861).  The undersigned does not find that a security is currently

3   warranted in this action.

4       Defendant also requests that the court issue an order requiring plaintiff to obtain leave of

5   court before filing any new cases against him with respect to the attack by Bennett.  This court

6   has inherent power under the All Writs Act, 28 U.S.C. § 1651(a), to enter a pre-filing order

7   against a vexatious litigant, but a pre-filing order is "an extreme remedy that should rarely be

8   used." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007).  Such orders

9   should be rare because they "can tread on a litigant's due process right of access to the courts."

10  *Id.*  Prior to issuing such an order, the court must (1) provide plaintiff with an opportunity to be

11  heard; (2) compile an adequate record; (3) make substantive findings about the frivolous or

12  harassing nature of plaintiff's litigation; and (4) narrowly tailor the order to closely fit the specific

13  vice encountered.  *Id.*

14      The federal definition of vexatiousness that plaintiff must fall within for a pre-filing order

15  to issue is much narrower than that provided by the California Code of Civil Procedure.   The

16  court looks to both the number and content of plaintiff's filings to determine whether his claims

17  have been frivolous.  *Id.* at 1059.  For a pre-filing order to issue, plaintiff's claims must not only

18  be numerous but also either patently without merit or containing false factual assertions.  *Id.* at

19  1060-61.

20      Defendant has summarized 11 prior cases brought by plaintiff but has identified none in

21  which the claims were patently without merit or contained false factual assertions.  Plaintiff

22  voluntarily dismissed four of the actions, four were dismissed for failure to state a claim, one was

23  dismissed when plaintiff failed to post a security, one was dismissed because plaintiff had not

24  exhausted his administrative remedies, and one was dismissed because plaintiff failed to submit a

25  compliant in forma pauperis application as ordered by the court.  Defendant has not shown any of

26  these cases to be frivolous or filed to harass.  Accordingly, the court should decline to enter the

27  prefiling order sought by defendant.

28  /////

1    **IV.  Defendant's Motion to Strike Plaintiff's Sur-reply**

2            Plaintiff filed a sur-reply to defendant's motion to dismiss.  Defendant asks the court to

3    strike it.  The request will be granted.  Parties do not have the right to file sur-replies and motions

4    are deemed submitted when the time to reply has expired.  Local Rule 230(*l*).  The Court

5    generally views motions for leave to file a sur-reply with disfavor.  *Hill v. England*, 2005 U.S.

6    Dist. LEXIS 29357, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing *Fedrick v. Mercedes-Benz*

7    *USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005)).  However, district courts have the

8    discretion to either permit or preclude a sur-reply.  *See U.S. ex rel. Meyer v. Horizon Health*

9    *Corp.*, 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to

10   permit "inequitable sur-reply"); *JG v. Douglas County School Dist.*, 552 F.3d 786, 803 n.14 (9th

11   Cir. 2008) (district court did not abuse discretion in denying leave to file sur-reply where it did

12   not consider new evidence in reply); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (new

13   evidence in reply may not be considered without giving the non-movant an opportunity to

14   respond).

15           Here, plaintiff did not obtain permission to file the sur-reply.  The filing is unnecessary to

16   the disposition of this motion and will be stricken.

17   **V.  Order and Recommendation**

18           For the reasons stated above, it is hereby ORDERED that plaintiff's sur-reply to the

19   motion to dismiss (ECF No. 33) is stricken.

20           It is further RECOMMENDED that defendant's motion to dismiss and to declare plaintiff

21   a vexatious litigant (ECF No. 30) be granted in part, such that:

22                   a.   Defendant's motion to dismiss be granted and the complaint be dismissed

23                        without leave to amend;

24                   b.   Defendant's motion that plaintiff be deemed a vexatious litigant under Local

25                        Rule 151(b) and be required to post a security be denied; and

26                   c.   Defendant's motion that plaintiff be subjected to a pre-filing order be denied.

27           These findings and recommendations are submitted to the United States District Judge

28   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

12

1    after being served with these findings and recommendations, any party may file written

2    objections with the court and serve a copy on all parties.  Such a document should be captioned

3    "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

4    within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

5    *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

6    DATED:  February 25, 2015.

7

8                                             EDMUND F. BRENNAN
                                              UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28